Charles S. **WALKER**, Plaintiff,

v.

David L. **LADD**, Commissioner of Patents, Defendant.

Civ. A. No. 2521–62.

United States District Court
District of Columbia.

July 16, 1963.

Stanley H. Foster, Yungblut, Melville, Strasser & Foster, Cincinnati, Ohio, F. M. deRosa, Watson, Cole, Grindle & Watson, Washington, D. C., for plaintiff.

Clarence W. Moore, Sol., U. S. Patent Office, Washington, D. C., for defendant.

JACKSON, District Judge.

This is an action brought pursuant to 35 U.S.C. § 145 in which the plaintiff seeks to have this Court authorize the defendant, Commissioner of Patents, to

issue a patent to him including Claims 2–4 and 6–14, inclusive, of his application entitled "Continuous Process and Apparatus for Making Concentrated Liquids", Serial No. 489,325, filed February 21, 1955.

The primary Examiner rejected all of the involved claims in view of a patent to Benscheidt et al., No. 2,685,783. Claims 1 and 5 had previously been cancelled by the plaintiff.

Upon appeal, the Board of Appeals sustained the decision of the Examiner rejecting the apparatus claims 10 and 11, and further rejected the balance of the involved process claims as being unpatentable over a patent No. 2,588,337, to George S. Sperti, in view of the Benscheidt et al. patent.

Claims 7 and 11 are representative, and read as follows:

"7. In a process of making liquid concentrates continuously from aqueous beverage liquids, the steps of continuously recirculating a concentratable liquid product between a continuous cooler and a refrigerated holding tank in a recirculatory system while causing the production of ice crystals in the material in said system by freezing, maintaining the said material in a pumpable condition by said recirculation, introducing into the said system increments of fresh liquid, withdrawing from said system at another point increments of treated material, and delivering the last mentioned increments to a separator whereby to effect the separation of some at least of said ice crystals.

"11. In apparatus for the purpose described, a reservoir for liquid to be concentrated, a recirculatory system including a refrigerated tank and a continuous cooler, means in said recirculatory system to enforce continuous and rapid circulation of material therein while ice crystals are being formed in said material, means for feeding increments of liquid into said recirculatory system from said reservoir, and means for withdrawing from said recirculatory system at another point comparable increments of treated material and for delivering said last mentioned increments to a centrifuge."

The claimed inventions involves a process of concentrating liquids, such as citrus juices, which includes the removal of some of the contained water by freezing it into ice crystals which can be separated from remaining unfrozen liquid.

The application discloses a closed recirculating system comprising a continuous freezer, a refrigerating tank, and a pump. The orange juice recirculates continuously in that system. The application shows a slurry wherein the liquid portion is useful for the sought purpose, while the slurry still contains all of the ice that had been frozen in it. Fresh liquid is introduced into the system, and partially frozen liquid including unfrozen liquid and ice crystals is withdrawn from the circulating stream in the same amount. The withdrawn material is then centrifuged to separate the concentrated liquid from solids, including ice crystals. The ice crystals are thawed after separation; and the resulting liquid concentrated by evaporation. The evaporative concentrate thus formed is admixed with the concentrated liquid from the centrifuge.

As was stated in the decision of the Board of Appeals in reversing the Examiner on his rejection of the process claims on the Benscheidt et al. patent: "We do not regard this procedure as suggestive of the claimed process in which the ice and liquid mixture is withdrawn from the recirculating system when the desired liquid concentration has been obtained."

The Sperti patent, No. 2,588,337, on which the present application purports to provide a patentable improvement, is entitled "Concentration of Orange Juice." The patentee defined a new process for making citrus juice concentrations. He discovered that when natural orange juice is first subjected to an appropriate low temperature, so as to form ice crystals in the juice the crystals can be sepa-

rated from the unfrozen portion of the juice by means of a centrifuge so that substantially all the flavoring esters remain. Solids contained in the natural juice such as pectin, sugar, etc., are carried in the separated ice crystals. In order to secure those solids, the ice crystals may be liquified, and the water evaporated. The remaining solids are mixed with the first concentrate so that the final product contains all of the solids, together with the flavoring material of the natural juice.

While that patent discloses that the process is adapted for continuous operation, it does not disclose or teach a recirculation. That operation, according to the testimony of the inventor himself, could not operate feasibly in this manner. The slush formed by passing the juice was not suitable for introduction into the centrifuge since it would either clog the centrifuge or result in an ice mass in the centrifuge which contained an undue quantity of occluded solids. However, the slurry bled out of applicant's recirculatory system was found suitable for introduction into the centrifuge; and applicant's process has been in commercial operation in Deland, Florida, and in Italy.

The Benscheidt et al. reference No. 2,685,783 is entitled "Method of and Apparatus for Dehydrating by Freezing". The specification sets out an object of the invention to provide a method wherein a solvent of a solution is progressively frozen at temperatures which result in the formation of fine solvent crystals.

The patent teaches and is directed to a batch system wherein the temperature of the batch liquid is reduced so that small ice crystals are formed in a series of successive steps of 5° to 7° Fahrenheit each below the freezing point with the removal of the crystals at the end of each stage.

It is to be noted that in the process of the patent the batch is treated repeatedly at successively lower temperatures for each stage, and likewise, the ice crystals are removed from the liquid at the conclusion of each stage. The ice is either discarded or used for cooling purposes.

To further describe the process of the patent, a batch of fresh juice is drawn from a supply into a holding tank. The batch is passed from the holding tank into a freezing tank, and thence to a separating screen through which the liquid and fine ice particles pass back to the holding tank. Ice crystals of sufficient size are delivered by the screen to a centrifuge for the separation of clinging liquid. The separated liquid is returned to the holding tank, and the ice is discharged. The temperature of the walls of the freezing tank is then lowered by 5° to 7°, and the now partially concentrated material is returned thereto for a second stage treatment in which a limited additional quantity of ice crystals are formed, which ice crystals are then removed as above described before a third stage can be attempted. Generally, four or more stages are practiced before a desired concentrated liquid product is obtained, the product then being discharged as a whole from the apparatus before the introduction of a fresh batch of juice upon which the several steps or stages of the process will be repeated.

The patent discloses an alternative procedure wherein several identical apparatus as that shown in the patent could be linked for successive hydration of large batches of material.

The Board of Appeals, in its decision, held that the involved process claims are unpatentable in view of the process of the Benscheidt et al. reference, joined with that of the Sperti patent.

It was shown at the trial by the testimony of the Sperti patentee that the feeding of a centrifuge directly from the discharge of a continuous freezing resulted in solids being retained in the ice or the centrifuge becoming blocked.

It is said the plaintiff surprisingly discovered that if a closed recirculating system were set up and then fresh juice was injected into the system while discharging a like quantity of slurry and passing that into a centrifuge, none of the mentioned difficulties would be met. Although the presence of the ice was so large in the recirculating system as to

result in a liquid portion of high concentration, *that* material was retained in a pumpable condition by the recirculation.

It is contended by counsel for plaintiff that in the Benscheidt et al. patent the material is not maintained in a pumpable condition. It is further contended that the term "recirculation" means the passage of a material repeatedly in a steady state through a closed recirculatory system, and that the patent does not show recirculation because of continuously subtracting a composition, namely, ice, from the body of the material. The Court agrees with these contentions, for the elements instituting the apparatus of the Benscheidt et al. patent do not constitute a continuous recirculatory system for juice undergoing treatment, because the juice as such never passes more than once through any part of the apparatus. The only materials ever returned in the Benscheidt et al. process are successive partial concentrates modified as to constitution; and the conditions in the freezing tank are themselves changed between each such pass.

Benscheidt et al. had for their purpose the formation of ice crystals which would occlude none of the solids of the juice, or such a small quantity of such solids, that the separated ice crystals could be discarded. They had no thought of making an evaporative second concentrate. But in order to accomplish their purpose, the patentees had to treat the juice batchwise, and in successive steps or stages with a very small temperature drop between stages. The teachings of the patentees are contrary to any concept of continuous operation.

The Board of Appeals correctly held that the Benscheidt et al. procedure is not "suggestive of the claimed process in which the ice and liquid mixture is withdrawn from the recirculating system when the desired liquid concentration has been obtained."

For all of these reasons, there is no basis in the prior art which would suggest the substitution of the apparatus and procedure of Benscheidt et al. for the slush freezer of Sperti. The question whether it would be obvious to do so is irrelevant in this record because if such a substitution were actually effected, nothing would result which would meet applicant's claims.

A patent to Holzcker, No. 2,448,802, was introduced by counsel for the defendant at the trial for the purpose of indicating that in a circulatory system it is not new to add the same measure of material as that taken away. Of course that is just common sense, and in no way either adds or detracts from the patentability of the involved claims.

The Court finds that it would not have been obvious to a person having ordinary skill in the liquid concentration art, in view of Benscheidt et al., at the time the plaintiff developed his apparatus and process to substitute for Sperti's freezer in his continuous process a continuous recirculatory freezing system in which the liquid is recirculated between a holding tank and a cooler while being maintained in pumpable condition by the continuous recirculation, and in which increments of fresh liquid are introduced into the system and corresponding amounts of treated materials are withdrawn from the system. The alleged system to be substituted cannot be found in Benscheidt et al., and indeed cannot be spelled out of a combination of Benscheidt et al. and Holzcker.

Also, and for the same reasons, the structure recited in claims 10 and 11 of plaintiff's application in suit cannot be found in the Benscheidt et al. patent.

The Court further finds the claims in suit are patentable over the prior art patents, taken alone or in combination.

■ Neither apparatus nor process claims can properly be rejected on a combination of steps or elements allegedly drawn from prior art disclosures where the steps or elements must be modified to meet the claims, and where both the combination and the modifications must be made in light of the applicant's own teachings, rather than in the light of any suggestions derivable from the prior art itself.

After a careful study, and consideration of the entire record, together with the briefs of the parties, the Court concludes that the plaintiff is entitled to a patent on application Serial No. 489,325 containing claims 2–4 and 6–14 inclusive, and the Commissioner of Patents shall be authorized to issue a patent in conformity therewith.

What has been stated hereinbefore shall constitute Findings of Fact and Conclusions of Law.